BOBBY H. CLAWSON, Employee, Plaintiff v. PHIL CLINE TRUCKING, INC., Employer, SELF INSURED (KEY RISK MANAGEMENT SERVICES, Adjusting Agent), Defendant

No. COA03-1569

(Filed 18 January 2005)

**1. Workers' Compensation— Form 26 Agreement—medical documentation—insufficient**

The Industrial Commission did not err in a workers' compensation action by invalidating a Form 26 Agreement for lack of medical documentation where the only document submitted that could be classified as a medical report was a one-paragraph note to plaintiff's chart. Plaintiff was treated at an emergency room and two pain clinics; in addition to the emergency room personnel, he saw three orthopedic surgeons, a neurosurgeon, a neurologist, and received physical therapy. Whether or not plaintiff had copies of the records which he did not submit, the fact remains that the necessary and relevant medical records were not submitted with the Agreement.

**2. Workers' Compensation— attorney fee—contingency— grounds for award—not addressed**

An award of attorney fees by the Industrial Commission in a workers' compensation case was remanded where the award was simply the ordinary contingent fee, awarded pursuant to N.C.G.S. § 97-90, and the Commission did not address whether grounds existed for the award of additional attorney fees pursuant to plaintiff's motion under N.C.G.S. §§ 97-88 and 97-88.1.

Appeal by plaintiff and defendants from Opinion and Award of the North Carolina Industrial Commission filed 14 April 2003. Heard in the Court of Appeals 20 September 2004.

*Walden & Walden, by Daniel S. Walden, attorney for plaintiff-appellee.*

*Womble Carlyle Sandridge & Rice, by Philip J. Mohr and Craig D. Cannon, attorneys for defendant-appellants.*

TIMMONS-GOODSON, Judge.

Phil Cline Trucking, Inc. ("Cline Trucking") and Key Risk Management Services ("Key Risk") (collectively "defendants") appeal

CLAWSON v. PHIL CLINE TRUCKING, INC.

[168 N.C. App. 108 (2005)]

an Opinion and Award by the North Carolina Industrial Commission ("Full Commission") invalidating a settlement agreement between Bobby H. Clawson ("plaintiff") and Key Risk for lack of medical documentation. Plaintiff cross appeals, arguing that the agreement should have been invalidated on grounds of fraud, misrepresentation, and/or undue influence. For the reasons stated herein, we affirm the Full Commission's Opinion and Award in part and remand in part for determination of a remaining issue.

The factual and procedural history of this case is as follows: On 3 January 1995, plaintiff was employed as a long-distance truck driver for Cline Trucking, earning an average of $550 per week. Plaintiff sustained a compensable injury while making a delivery in Lawrence, Massachusetts, where plaintiff slipped on ice covering an asphalt parking lot and fell, injuring his lower back, tailbone and left foot. Shortly after plaintiff was injured, he and Cline Trucking entered into an Agreement for Compensation for Disability (a "Form 21 Agreement"). Under the terms of the Form 21 Agreement, Cline Trucking agreed to pay plaintiff temporary total disability ("TTD") benefits in the amount of $347.50 per week beginning 13 January 1995, and continuing for as long as necessary. On 17 March 1995, Key Risk Management Services, insurance carrier for Cline Trucking, notified plaintiff that his TTD benefits would be terminated on 1 May 1995, the day that plaintiff was due to return to work on a trial basis. Because plaintiff would be returning to work in a different capacity and at lower wages than he earned at the time of his injury, plaintiff was still entitled to compensation for partial disability.

On 16 July 1995, plaintiff stopped working due to pain from his injury. Key Risk reinstated plaintiff's TTD benefits, and plaintiff underwent physical therapy treatments for several months. In October, plaintiff underwent a functional capacity evaluation to determine if and in what capacity he would be able to work. In November, plaintiff was referred to a pain management clinic, and participated in a four-week inpatient pain management program in March 1996.

In March 1996, Key Risk enlisted CorVel Corporation to provide vocational rehabilitation to assist plaintiff in finding a job. After one year, plaintiff was still unable to obtain employment. CorVel ceased providing vocational rehabilitation services for plaintiff on 24 February 1997. At that time, CorVel vocation rehabilitation expert Lou Drumm sent plaintiff's case file to legal counsel for Key Risk. On 3 March 1997, Key Risk stopped paying plaintiff TTD benefits but

failed to file an Application to Terminate or Suspend Payment of Compensation ("Form 24"). Key Risk claims adjuster Janice Sherrell testified that the payments ceased due to a computer error.

On 23 October 1997, plaintiff filed a request for a hearing (a "Form 33 request") with the Full Commission to address the "termination of temporary total benefits and disagreement over degree of disability." Sherrell later testified that she did not realize that plaintiff was no longer receiving TTD benefits until she received notice of the Form 33 request for a hearing. When Sherrell received notice of the request, she "was instructed by superiors to send it on to the defense counsel for representation, and not to issue a back check." Sherrell did not reinstate plaintiff's TTD benefits.

On 1 November 1999, plaintiff and Key Risk filed a Supplemental Agreement as to Payment of Compensation ("a Form 26 Agreement") which states that plaintiff has a 10% permanent partial impairment of his back. The Form 26 Agreement further states that Key Risk agreed to pay plaintiff permanent partial disability compensation in the amount of $347.50 for 30 weeks as a lump sum of $10,425. The Form 26 Agreement included a one-paragraph note to plaintiff's medical file drafted by a doctor who treated plaintiff at a neurology clinic, but did not include other documentation ordinarily submitted with a Form 26 Agreement, such as medical records, the insurance rating, the return-to-work report or other documentation showing why the employee was no longer entitled to TTD benefits.

On 3 February 2000, a deputy commissioner approved the Form 26 Agreement. On 7 January 2001, plaintiff filed a Motion in the Cause to Set Aside the Form 26 Agreement. Plaintiff argued, in pertinent part, that the Form 26 Agreement was not fair and just to plaintiff for the following reason:

> defendant did not supply the Commission with, and the Commission did not require or have the extensive medical records, rehabilitation records, and vocational records and reports generated in the five year period from 3 January 1995, the date of plaintiff's accident, to 3 February 2000, the date the Commission approved the Form 26.

The motion was called for hearing before another deputy commissioner on 13 March 2002, and concluded on 22 March 2002. On 8 August 2002, the deputy commissioner issued an Opinion and Award declaring the Form 26 Agreement "null and void due to defendants'

violation of the provisions of G.S. 97-82." The deputy commissioner further ruled that plaintiff had an alternate basis for relief in that Key Risk's "unilateral termination of plaintiff's disability benefits" was conduct constituting "fraud and/or misrepresentation on the Commission," and "undue influence over plaintiff," and therefore "justifies setting aside the Form 26 Agreement."

Defendants appealed the deputy commissioner's Opinion and Award to the Full Commission. The Full Commission heard the appeal on 27 January 2003, and issued an Opinion and Award on 14 April 2003. The Full Commission found the following pertinent facts: (1) The only document or record attached to the Form 26 Agreement which could be classified as a medical report was a one-paragraph note to plaintiff's medical chart from a neurology clinic; (2) the note mentions that plaintiff was a patient at the MidAtlantic Center for Pain, but no records from the MidAtlantic Center were submitted with the Form 26 Agreement; (3) the Form 26 Agreement indicates that Key Risk paid $53,187.48 in medical costs, rehabilitation services, and other miscellaneous costs related to plaintiff's injury, but no medical records related to these costs were submitted with the Form 26 Agreement; (4) the parties had approximately 140 pages of medical records pertaining to plaintiff's injury and approximately 127 pages of rehabilitation reports that were not submitted with the Form 26 Agreement. The Full Commission ultimately found that the deputy commissioner "did not have all relevant records necessary to properly determine the approval of the Form 26 Agreement," and therefore the Agreement "was not fair and just to the employee."

The Full Commission concluded that "[t]he Form 26 agreement in this claim, approved on February 3, 2000, should be declared null and void because the Commission did not have all relevant information within the possession of the parties." The Full Commission further found that "[b]ased on the circumstances of the evidence in this case, the Commission does not find that either party's conduct arises to the level of fraud. Similarly, the evidence does not support a conclusion that plaintiff entered into the Form 26 Agreement under duress." The Full Commission entered the following award:

1. Defendants shall pay plaintiff total disability compensation benefits at the rate of $347.50 per week for the period beginning January 6, 1995 and continuing until plaintiff returns to work or further order of the Commission. Defendants are entitled to a credit for benefits paid during this period, including ·

CLAWSON v. PHIL CLINE TRUCKING, INC.

[168 N.C. App. 108 (2005)]

the payment for the impairment rating pursuant to the voided Form 26 Agreement. Defendants are entitled to a credit for the income received by plaintiff during his four unsuccessful attempts to return to work. To the extent that these benefits have accrued, they shall be paid in a lump sum, subject to attorney's fees awarded below. Other benefits accrue weekly, and absent other order from the Commission, shall be paid weekly, subject to the attorney's fees awarded below.

2. Defendants shall pay a 10% late payment penalty on all past unpaid compensation due plaintiff after April 22, 2001 until timely paid.

3. Defendants shall pay for all medical expenses incurred by plaintiff or to be incurred by plaintiff as a result of his back injury. Defendants shall pay for any treatment by Dr. Poehling for the period after January 2001.

4. A reasonable attorney's fee in the amount of one third of all unpaid accrued compensation awarded herein to plaintiff is approved for plaintiff's present counsel. This fee shall be withheld from the recovery of plaintiff and paid directly to counsel for plaintiff. A reasonable attorney's fee of one-fourth of ongoing future compensation due plaintiff is approved for plaintiff's counsel, and every fourth check shall be paid directly to counsel for plaintiff.

5. Defendants shall pay all costs, including the expert witness fees previously awarded.

It is from this Opinion and Award that plaintiff and defendants appeal.

———————————

As an initial matter, we note that defendants' brief does not contain an argument supporting Assignment of Error #9. The omitted assignment of error is deemed abandoned pursuant to N.C.R. App. P. 28(b)(6) (2004). We therefore limit our review to the assignments of error properly addressed in plaintiff's and defendants' briefs.

The issues presented on appeal are whether the Full Commission erred by (I) invalidating the Form 26 Agreement for lack of medical documentation; (II) ruling in plaintiff's favor when it was plaintiff's responsibility to submit the proper documentation; (III) failing to address one of the issues for determination at the hearing; (IV) failing to invalidate the Form 26 Agreement on grounds of fraud, misrepre-

sentation, and/or undue influence; and (V) awarding attorney's fees of one-fourth of plaintiff's compensation.

**[1]** Defendants first argue that the Full Commission erred by invalidating the Form 26 Agreement for lack of medical documentation. We disagree.

Our standard of review is "limited to reviewing whether any competent evidence supports the Commission's findings of fact and whether the findings of fact support the Commission's conclusions of law." *Deese v. Champion Int'l Corp.*, 352 N.C. 109, 116, 530 S.E.2d 549, 553 (2000). " '[T]he findings of fact of the Industrial Commission are conclusive on appeal when supported by competent evidence, even though there be evidence that would support findings to the contrary.' " *Adams v. AVX Corp.*, 349 N.C. 676, 681, 509 S.E.2d 411, 414 (1998) (quoting *Jones v. Desk Co.*, 264 N.C. 401, 141 S.E.2d 632 (1965)).

"If the employer and the injured employee or his dependents reach an agreement in regard to compensation under [the Workers' Compensation Act], they may enter into a memorandum of the agreement in the form prescribed by the Commission." N.C. Gen. Stat. § 97-82(a) (2003). "The memorandum of agreement, *accompanied by a full and complete medical report*, shall be filed with and approved by the Commission." *Id.* (emphasis added). The North Carolina Industrial Commission Workers' Compensation Rules provide that "[n]o agreement for permanent disability will be approved until all *relevant* medical, vocational and nursing rehabilitation reports *known to exist* in the case have been filed with the Industrial Commission." Workers' Comp. R. of N.C. Indus. Comm'n 501(3) (emphasis added). While the Workers' Compensation Rules do not define the term "relevant medical reports," "reading 501(3) in light of N.C. Gen. Stat. § 97-82(a) leads us to conclude that relevant records include the full and complete medical records related to the work-related injury." *Atkins v. Kelly Springfield Tire Co.*, 154 N.C. App. 512, 514, 571 S.E.2d 865, 866 (2002).

There is sufficient evidence that the parties failed to submit a full and complete medical report with the Form 26 Agreement to support the Full Commission's findings of fact and conclusions of law. The record on appeal demonstrates that plaintiff was treated by numerous doctors for his back injury. Plaintiff testified that he sought treatment at an emergency room immediately after his fall, that upon his return to North Carolina he was treated by three orthopaedic sur-

geons, a neurosurgeon and a neurologist. Plaintiff sought treatment at two pain clinics and received physical therapy treatment. The record further demonstrates that the parties failed to submit any documentation of plaintiff's extensive medical treatment as required by Rule 501(3). Accordingly, we affirm the Full Commission's ruling.

Defendants next argue that the Full Commission erred by ruling in plaintiff's favor, because plaintiff had the responsibility to submit the proper documentation. We disagree.

"After the employer or carrier/administrator has received a memorandum of agreement which has been signed by the employee and employee's attorney of record, if any, it shall have 20 days within which to submit the memorandum of agreement to the Industrial Commission for review and approval . . . ." Workers' Comp. R. of N.C. Indus. Comm'n 501(7). Thus, it is the responsibility of the employer or its insurance carrier to submit the Form 26 Agreement and all attendant medical documentation to the Full Commission.

In the present case, defendants argue that plaintiff volunteered to submit the Form 26 Agreement to the Full Commission, and that plaintiff had copies of all relevant medical records but did not submit them with the Form 26 Agreement. Therefore, defendants argue, because plaintiff failed to submit the medical records with the Form 26 Agreement, plaintiff had no right to appeal the Form 26 Agreement based on the lack of appropriate medical documentation.

Without regard to which party submitted the Form 26 Agreement to the Full Commission, the fact remains that the necessary and relevant medical records were not submitted with the Agreement. A full and complete medical report is essential for the deputy commissioner to accurately assess the proposed settlement agreement. Because the parties failed to file a full and complete medical report, we conclude that the Full Commission properly invalidated the Form 26 Agreement.

Defendants next argue that, although the Form 26 Agreement was set aside, the Full Commission erred by failing to address one of the issues for determination at the hearing. We disagree.

"All questions arising under [the Workers' Compensation Act] if not settled by agreements of the parties interested therein, with the approval of the Commission, shall be determined by the Commission, except as otherwise herein provided." N.C. Gen. Stat. § 97-91 (2003).

In the underlying Opinion and Award, the Full Commission indicated the following question as an issue for determination in the alternative to the issues regarding the Form 26 Agreement:

> [H]as plaintiff undergone a G.S. §97-47 change of condition since 3 February 2000 when the Form 26 compensation agreement was approved?

Defendant correctly points out that the Full Commission failed to address this issue in its findings of fact and conclusions of law. However, since the Full Commission determined the matter based on its resolution of the Form 26 issues, it did not need to address this issue. As we have reached the same conclusion, we need not address this issue. This assignment of error is overruled.

Having addressed all of the issues presented by defendant on appeal, we turn to the issues presented by plaintiff on cross-appeal. Plaintiff first argues that the Full Commission erred by failing to invalidate the Form 26 Agreement on grounds of fraud, misrepresentation, and/or undue influence.

As discussed *supra*, this Court is bound by the Full Commission's findings of fact "if supported by competent evidence even though there is evidence to support a contrary finding." *Roberts v. Century Contrs., Inc.*, 162 N.C. App. 688, 691, 592 S.E.2d 215, 218 (2004). "[T]his Court is not at liberty to reweigh the evidence and to set aside the findings . . . simply because other . . . conclusions might have been reached." *Id.* (citations and quotations omitted).

The Full Commission found that "[b]ased on the circumstances of the evidence in this case, the Commission does not find that either party's conduct arises to the level of fraud. Similarly, the evidence does not support a conclusion that plaintiff entered into the Form 26 Agreement under duress." The Full Commission's decision to void the Form 26 Agreement is supported by competent evidence, discussed *supra*, and, therefore, is conclusive on appeal. Accordingly, we decline to reconsider the issue of fraud, misrepresentation or undue influence, or set aside the findings of the Full Commission on the possibility that a different conclusion might have been reached.

[2] Plaintiff also argues that the Full Commission erred by "reversing the deputy's award of attorney's fees against defendant under G.S. 97-88.1," and failing to address plaintiff's 13 January 2003 motion for attorney's fees under N.C. Gen. Stat. §§ 97-88 and 97-88.1.

The standard of review for an award of attorneys' fees by the Full Commission is abuse of discretion. *Childress v. Trion, Inc.*, 125 N.C. App. 588, 590, 481 S.E.2d 697, 698, *disc. rev. denied*, 346 N.C. 276, 487 S.E.2d 541 (1997) (citing *Taylor v. J.P. Stevens Co.*, 307 N.C. 392, 298 S.E.2d 681 (1983)). The General Statutes provide for attorneys' fees in workers' compensation cases as follows:

> If the Industrial Commission at a hearing on review or any court before which any proceedings are brought on appeal under this Article, shall find that such hearing or proceedings were brought by the insurer and the Commission or court by its decision orders the insurer to make, or to continue payments of benefits, including compensation for medical expenses, to the injured employee, the Commission or court may further order that the cost to the injured employee of such hearing or proceedings including therein reasonable attorney's fee to be determined by the Commission shall be paid by the insurer as a part of the bill of costs.

N.C. Gen. Stat. § 97-88 (2003).

> If the Industrial Commission shall determine that any hearing has been brought, prosecuted, or defended without reasonable ground, it may assess the whole cost of the proceedings including reasonable fees for defendant's attorney or plaintiff's attorney upon the party who has brought or defended them.

N.C. Gen. Stat. § 97-88.1 (2003).

In the present case, the deputy commissioner awarded plaintiff attorney's fees as follows:

> A reasonable attorney's fee in the amount of one third percent of all accrued compensation awarded herein to plaintiff is approved for plaintiff's present counsel. . . . A reasonable attorney's fee of one third of ongoing future compensation due plaintiff is approved for plaintiff's counsel, and shall be paid as a part of the cost of this action.

Defendants' counsel filed a Notice of Appeal of the Opinion and Award on 12 August 2002. On 13 January 2003, plaintiff filed a Motion for Award of Attorney's Fees as follows:

> Plaintiff moves the Commission panel to order that the cost to plaintiff of this proceeding, including reasonable attorney's fees, be paid by defendant as a part of the bill of costs. Plaintiff seeks

to be awarded an attorney's fee of 25 percent of all additional past and future benefits awarded plaintiff, to be paid in addition to the $347.50 weekly disability benefit due plaintiff.

The Full Commission conducted a hearing on 27 January 2003, and issued an Opinion and Award with regard to attorney's fees as follows:

> A reasonable attorney's fee in the amount of one third of all unpaid accrued compensation awarded herein to plaintiff is approved for plaintiff's present counsel. . . . A reasonable attorney's fee of one-fourth of ongoing future compensation due plaintiff is approved for plaintiff's counsel, and every fourth check shall be paid directly to counsel for plaintiff.

The Full Commission's Opinion and Award did not mention N.C. Gen. Stat. §§ 97-88 or 97-88.1 or plaintiff's motion filed 13 January 2003. Thus, we conclude that the attorney's fee award above is simply the ordinary contingent fee, awarded pursuant to N.C. Gen. Stat. § 97-90, and that the Full Commission has not addressed whether grounds exist for an award of additional attorney's fees pursuant to plaintiff's motion. Plaintiff correctly notes that this Court has ruled it is error for the Full Commission to fail to address such a motion. *Cialino v. Wal-Mart Stores*, 156 N.C. App. 463, 577 S.E.2d 345 (2003). Thus, we remand this case for the Full Commission to address plaintiff's motion.

AFFIRMED in part, REMANDED in part.

Chief Judge MARTIN and Judge HUDSON concur.