GARY L. SHEPHERD, Employee, Plaintiff v. NATIONAL FEDERATION, Employer, PMA INSURANCE GROUP, Carrier, Defendants

No. COA10-638

(Filed 5 April 2011)

**1. Appeal and Error— stay pending appeal—mediated settlement agreement—"other matter" not covered by stay**

A decision of the Industrial Commission in a workers' compensation case was remanded where the Commission decided that a mediated settlement was outside its jurisdiction because the underlying case was on appeal. N.C.G.S. § 1-294 defines the scope of an appeal stay to exclude other matters not affected by the judgment appealed from; and the Industrial Commission had jurisdiction as an administrative agency to make administrative decisions about the parties' mediated settlement agreement.

Appeal by defendants from order entered 3 February 2010 by Pamela T. Young, Chair, on behalf of the Full Commission. Heard in the Court of Appeals 17 November 2010.

*Gary L. Shepherd, plaintiff, pro se.*

*Hedrick, Gardner, Kincheloe & Garofalo, L.L.P., by M. Duane Jones, for defendants.*

ELMORE, Judge.

National Federation (defendant-employer) and PMA Insurance Group (defendant-carrier; together, defendants) appeal an order by the Full Commission vacating a 19 July 2009 Opinion and Award for

lack of subject matter jurisdiction. Because we hold that the Full Commission erred by concluding that the Industrial Commission lacked jurisdiction to enter the 19 July 2009 Opinion and Award, we reverse the Full Commission's order and remand to the Full Commission.

## I. Background

This case is on appeal from the Industrial Commission for the second time. The first time, we affirmed an opinion and award issued by the Full Commission. *Shepherd v. Nat'l Fed'n of Indep. Buss.*, 2008 N.C. App. Lexis 24 (Jan. 15, 2008). Our first opinion contains a more complete factual history of the underlying workers' compensation matter, which is of limited relevance to the current appeal. Of relevance is that plaintiff was an employee of defendant-employer on 23 May 2003, when he suffered a compensable injury. *Id.* at *12. Defendants denied plaintiff's claim for wage loss. *Id.* at *4. Plaintiff appealed, and, on 24 September 2005, Deputy Commissioner John B. DeLuca issued an opinion and award in favor of plaintiff. *Id.* Defendants appealed to the Full Commission, which affirmed Deputy Commissioner DeLuca's opinion and award on 22 August 2006. *Id.* Defendants then appealed to this Court, which heard the case on 29 August 2007 and affirmed the Full Commission's opinion and award on 15 January 2008. *Id.* at *1, *12.

However, while defendants' appeal was pending at this Court, the parties participated in voluntary mediation through the Appellate Mediation Program. On 22 May 2007, the parties met and mediated the matter during a mediated settlement conference with Steve Sizemore serving as the mediator. At the mediation, the parties entered into and executed a mediated settlement agreement. Both attorneys signed the mediated settlement agreement. Plaintiff also signed the mediated settlement agreement. Under the mediated settlement agreement, the parties agreed that defendants would pay plaintiff the total sum of $50,000.00, and, in consideration of that payment, plaintiff would execute "a standard Compromise Settlement Agreement and Release that complies with N.C.G.S. 97-17." The mediated settlement agreement also included the following contingency clause:

Other: plaintiff is a current Medicare recipient; as such, the parties understand an MSA [Medicare Set-Aside Agreement] is required; defendants shall obtain a revised MSA, and, in the event said revised MSA is for an amount which defendants agree is accept-

able, defendants shall fund a guaranteed MSA; however, in the event said MSA is beyond the amount defendants are willing to pay, this settlement agreement is voidable by defendants; in addition, plaintiff agrees to be fully responsible for any Medicare lien, which is represented to be no more than $14,620; the parties agree if plaintiff is unable to get said Medicare lien reduced by 1/3, this agreement is voidable by plaintiff.

Defendants drafted an Agreement for Compromise Settlement and Release (clincher agreement) for the parties to sign and submit to the Industrial Commission. However, plaintiff refused to sign the clincher agreement. Defendants obtained a revised MSA in the amount of $18,106.00, which they agreed to fund. Defendants also agreed to be responsible for the full amount of the Medicare lien, not to exceed $15,000.00, "[i]n an effort to finalize the agreement[.]" Plaintiff continued to refuse to sign the clincher agreement. Plaintiff's attorney, apparently, could not persuade plaintiff to sign the clincher agreement or otherwise honor the mediated settlement agreement, and the Industrial Commission allowed her to withdraw from representation. Plaintiff continued *pro se*.

On 13 December 2007, defendants filed a motion in the Industrial Commission to enforce the mediated settlement agreement. On 8 April 2008, Executive Secretary Tracey H. Weaver denied defendants' motion because, "[w]ithout the consent of a plaintiff for review and approval of the Compromise Settlement Agreement, a hearing is required to establish the information required for a potential approval of the Mediated Settlement Agreement as a final settlement in this case." Both parties requested a hearing because they had failed to reach an agreement in regard to compensation. Plaintiff asserted that they had been unable to reach an agreement because "[d]efendants continue to defy the orders of the Courts and the Industrial Commission[.]" Defendants asserted that plaintiff had executed a mediated settlement agreement but refused to sign the clincher agreement, and they "wish[ed] to enforce the agreement." Defendants maintained that they had settled the claim.

On 21 October 2008, Deputy Commissioner Kim Ledford heard defendants' motion to enforce the mediated settlement agreement. Deputy Commissioner Ledford entered an order on 3 December 2008, ordering defendant "to pay all medical bills up to the amount of $12,633.22[,] which is set forth in the Mediated Settlement Agreement[.]" Deputy Commissioner Ledford also invited the parties to submit additional records.

On 17 June 2009, Deputy Commissioner Ledford entered her opinion and award. She identified the following two issues in the opinion and award: (1) "Whether the mediated settlement agreement executed by the parties at the mediation occurring on May 22, 2007[,] should be enforced[,]" and (2) "If the mediated settlement agreement is not subject to enforcement, what other benefits, if any, is [p]laintiff entitled to receive?"

Deputy Commissioner Ledford found, as fact, that the parties had fulfilled both contingencies set out in the mediated settlement agreement. She also found "no evidence of a mistake related to the knowledge of the parties at the time of the mediation," no credible evidence that "[p]laintiff was mislead [sic] or unduly pressured to sign the Mediation Agreement[,]" and that "[p]laintiff knowingly entered into an agreement at mediation to compromise and finally settle his workers' compensation claim related to the May 23, 2003[,] injury by accident." Deputy Commissioner Ledford concluded, as a matter of law, that "the Mediation Agreement as reduced to the Compromise Settlement Agreement, which fulfilled all the contingencies of the Mediation Agreement and actually went beyond those contingencies in Plaintiff's favor, is deemed to meet the requirements of valid contract, such that the same is enforceable." Deputy Commissioner Ledford ordered plaintiff to comply with the mediation settlement agreement, "as reduced to the Compromise Settlement Agreement[.]" She also ordered defendants to pay plaintiff's outstanding medical expenses, up to $12,633.22; to fund plaintiff's MSA in the amount of $18,106.00; to pay plaintiff's Medicare lien, up to $15,000.00; to pay plaintiff $50,000.00, less $12,500.00 approved as attorney fees for plaintiff's former attorney; and to pay plaintiff's attorney's fees, in the amount of $12,500.00, and costs.

On 13 July 2009, plaintiff appealed Deputy Commissioner Ledford's opinion and award to the Full Commission. The Full Commission reviewed the matter on 2 December 2009 and issued an order on 3 February 2010. The Full Commission set out some of the procedural history of the case, but it did not make separate findings of fact or conclusions of law. Instead, it reached the following conclusion:

Upon review of the above procedural circumstances of the case, the Full Commission concludes that once the Court of Appeals rendered its January 15, 2008[,] decision on the merits of the case, the Industrial Commission did not have jurisdiction over a Mediated Settlement Agreement formed by the parties while the case was pending before the Court of Appeals.

SHEPHERD v. NAT'L FED'N

[210 N.C. App. 733 (2011)]

Based on that reasoning, the Full Commission vacated Deputy Commissioner Ledford's opinion and award as null and void.

Defendants now appeal, arguing that the Full Commission erred by concluding that the Industrial Commission did not have jurisdiction over the mediated settlement agreement. We agree.

## II. Arguments

### A. Standard of Review

As a general rule, the Commission's findings of fact are conclusive on appeal if supported by any competent evidence. It is well settled, however, that the Commission's findings of jurisdictional fact are *not* conclusive on appeal, even if supported by competent evidence. The reviewing court has the right, and the duty, to make its own independent findings of such jurisdictional facts from its consideration of all the evidence in the record.

. . . When . . . the appellate court reviews findings of jurisdictional fact entered by the Commission, . . . the reviewing court [must] make its own independent findings of . . . jurisdictional fact from its consideration of all the evidence in the record.

*Perkins v. Arkansas Trucking Servs., Inc.*, 351 N.C. 634, 637, 528 S.E.2d 902, 903-04 (2000) (quotations, citations, and alteration omitted).

### B. The Industrial Commission had jurisdiction over the mediated settlement agreement.

"The North Carolina Workers' Compensation Act permits parties to enter into settlement agreements, subject to approval by the Commission, 'so long as the amount of compensation and the time and manner of payment are in accordance with the provisions of [the Act].' " *Roberts v. Century Contrs's, Inc.*, 162 N.C. App. 688, 691, 592 S.E.2d 215, 218 (2004) (quoting N.C. Gen. Stat. § 97-17(a)). Subsection 97-17(a) of our General Statutes further provides:

A copy of a settlement agreement shall be filed by the employer with and approved by the Commission. No party to any agreement for compensation approved by the Commission shall deny the truth of the matters contained in the settlement agreement, unless the party is able to show to the satisfaction of the Commission that there has been error due to fraud, misrepresentation, undue influence or mutual mistake, in which event the Commission may set aside the agreement. Except as provided in

this subsection, the decision of the Commission to approve a settlement agreement is final and is not subject to review or collateral attack.

N.C. Gen. Stat. § 97-17(a) (2009).

General Statute section 1-294 defines the scope of a stay when a matter is pending on appeal from a court, and it applies to appeals taken from the Full Commission. N.C. Gen. Stat. § 1-294 (2009); *Roberts*, 162 N.C. App. at 695, 592 S.E.2d at 220. Section 1-294 states, in relevant part:

When an appeal is perfected as provided by this Article it stays all further proceedings in the court below upon the judgment appealed from, or upon the matter embraced therein; but the court below may proceed upon any other matter included in the action and not affected by the judgment appealed from.

N.C. Gen. Stat. § 1-294 (2009). Although "[a]n appeal to this Court divests the Industrial Commission of jurisdiction to issue opinions and awards[,]" *Roberts*, 162 N.C. App. at 695, 592 S.E.2d at 220 (citations omitted), it does not divest the Industrial Commission of jurisdiction to "proceed upon any other matter included in the action and not affected by the judgment appealed from[,]" N.C. Gen. Stat. § 1-294 (2009). Otherwise, there would be no means for the Industrial Commission to carry out its administrative tasks, including those set out by N.C. Gen. Stat. § 97-17(a):

The Industrial Commission is primarily an administrative agency of the State, and its jurisdiction as an administrative agency is a continuing one. The Industrial Commission acts in a judicial capacity only in respect to a controversy between an employer and employee. The existence of such a controversy, or an appeal from the determination of such a controversy, does not operate to divest the Commission of its administrative powers. Obviously, an appeal of an award of the Industrial Commission does not suspend that agency's authority to accept notification of an employee's decision to select his own doctor; neither does an appeal deprive the Commission of its *jurisdiction* to accept the submission of a claim. It may well be that the determination of the particular claim will be delayed until the outcome of the appeal. Nevertheless, the Commission has jurisdiction to receive the claim and is, in fact, the only agency vested with that jurisdiction.

*Schofield v. Tea Co.*, 299 N.C. 582, 593-94, 264 S.E.2d 56, 64 (1980), *superceded by statute on other grounds as stated in Franklin v. Broyhill Furniture Industries*, 123 N.C. App. 200, 208, 472 S.E.2d 382, 387 (1996).

Here, the parties participated in voluntary mediation through this Court's mediation program while defendants' appeal to this Court was pending. They reached an agreement independent of the opinion and award that was pending on appeal. Plaintiff's counsel asked this Court to hold the appeal in abeyance until plaintiff could sort out the Medicare lien. Plaintiff did not attempt to sort out the Medicare lien, and this Court heard plaintiff's appeal and issued an opinion, presumably because the matter had not been fully "settled" in mediation; the parties left contingencies in the mediated settlement agreement, and plaintiff refused to sign the clincher agreement. Because plaintiff refused to sign the clincher agreement, defendants could not submit it to the Industrial Commission for review and approval, as required by N.C. Gen. Stat. § 97-17(a). *See, e.g., Smythe v. Waffle House*, 170 N.C. App. 361, 364, 612 S.E.2d 345, 348 (2005) ("The Industrial Commission must review all compromise settlement agreements to make sure they comply with the Workers' Compensation Act and the Rules of the Industrial Commission, and to ensure that they are fair and reasonable."). Accordingly, defendants moved the Industrial Commission to enforce the mediated settlement agreement in the absence of a clincher agreement, which request Deputy Commissioner Ledford properly heard.

The Industrial Commission was not divested of jurisdiction to consider the parties' mediated settlement agreement simply because an opinion and award was pending at this Court; the Industrial Commission had jurisdiction as an administrative agency to make administrative decisions about the parties' mediated settlement agreement. The Full Commission erred by concluding otherwise. The Full Commission should have considered the merits of plaintiff's appeal from Deputy Commissioner Ledford's order, and it should have fully reviewed Deputy Commissioner Ledford's order and issued its own order on the merits.

Because the Full Commission did not review the merits of the order below, we do not consider defendants' additional arguments that the Full Commission erred by not concluding that the mediated settlement agreement was an enforceable agreement and the mediated settlement agreement was "fair and just." The Full Commission made

no findings or conclusions about the mediated settlement agreement except that it was outside the Industrial Commission's jurisdiction; the scope of our review does not extend as far as defendants' arguments would require. *See, e.g., id.* ("[W]hen the findings are insufficient to determine the rights of the parties, the court may remand to the Industrial Commission for additional findings.") (quotations and citation omitted; alteration in original).

### III. Conclusion

We remand to the Full Commission to consider plaintiff's appeal on the merits. We advise the Full Commission that its 22 August 2006 opinion and award, affirmed by this Court on 15 January 2008, will govern the relationship between the parties if the Full Commission does not enforce the mediated settlement agreement.

Reversed and remanded.

Judges HUNTER, Robert C., and CALABRIA concur.